**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN RYAN,<br><br>        Plaintiff,<br><br>    v.<br><br>ALBIREO PHARMA, INC., RONALD H.W. COOPER, DAVID CHISWELL, SUSAN ALESINA, HABIB DABLE, MICHAEL GUTCH, CRAIG C. HOPKINSON, STEPHANIE S. OKEY, and DAVEY S. SCOON,<br><br>        Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff John Ryan ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Albireo Pharma, Inc. ("Albireo" or the "Company") and Albireo's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to Ipsen Biopharmaceuticals, Inc. through its wholly-owned subsidiary Anemone Acquisition Corp. (collectively "Ipsen").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on January 23, 2023. The 14D-9 recommends that Albireo stockholders tender their shares in favor of a proposed transaction (the

1

"Proposed Transaction") whereby Albireo is acquired by Ipsen. The Proposed Transaction was first disclosed on January 9, 2023, when Albireo and Ipsen announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Ipsen will acquire all of the outstanding shares of common stock of Albireo for $42.00 per share (the "Merger Consideration"). The deal is valued at approximately $952 million and is expected to close in the first quarter of 2023.

3.      The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the financial projections prepared by Albireo management, the financial analyses conducted by Centerview Partners LLC ("Centerview"), Albireo's financial advisor, and potential conflicts of interest faced by Centerview and Company insiders.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Albireo's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Albireo.

6.      Defendant Albireo is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 53 State Street, 19th

Floor, Boston, Massachusetts 02109. Albireo common stock trades on the Nasdaq Capital Market under the ticker symbol "ALBO."

7. Defendant Ronald H.W. Cooper has been the President, Chief Executive Officer and a director of the Company since 2016.

8. Defendant David Chiswell has been a director of the Company since 2016. Defendant Chiswell serves as Chairman of the Board.

9. Defendant Susan Alesina has been a director of the Company since August 2022.

10. Defendant Habib Dable has been a director of the Company since August 2022.

11. Defendant Michael Gutch has been a director of the Company since 2016.

12. Defendant Craig C. Hopkinson has been a director of the Company since December 2022.

13. Defendant Stephanie S. Okey has been a director of the Company since 2018.

14. Defendant Davey S. Scoon has been a director of the Company since 2013.

15. Nonparty Ipsen Biopharmaceuticals, Inc. is a Delaware corporation with its principal executive offices located at 1 Main St, Cambridge, Massachusetts 02142.

16. Nonparty Anemone Acquisition Corp. is a Delaware corporation and is a wholly owned subsidiary of Ipsen Biopharmaceuticals, Inc.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20.      Albireo is a biopharmaceutical company focused on developing treatments for pediatric and adult liver diseases and other gastrointestinal illnesses. Albireo's lead product, Bylvay, was approved by the U.S. FDA as the first drug for the treatment of pruritus in progressive familial intrahepatic cholestasis. The Company is also developing Bylvay to treat other rare pediatric liver diseases.

21.      On January 8, 2023, the Company entered into the Merger Agreement with Ipsen.

22.      According to the press release issued on January 9, 2023 announcing the Proposed Transaction:

**Ipsen to acquire Albireo accelerating growth in rare disease with treatments for several pediatric liver diseases**

January 9, 2023

- Transaction focused on Bylvay® (odevixibat), the first-approved treatment in progressive familial intrahepatic cholestasis in U.S. and E.U., with potential in other rare diseases

- Acquisition aligned with Ipsen's long-term strategy for expanding the scope of its Rare Disease portfolio and pipeline

- Ipsen to commence cash tender offer to acquire all issued and outstanding shares of Albireo for $42.00 per share plus a contingent value right (CVR)

of $10.00 per share related to the U.S. FDA approval of Bylvay in biliary atresia

**PARIS, FRANCE & BOSTON, U.S.,** 09 January 2023 – Ipsen (Euronext: IPN: ADR: IPSEY) and Albireo (Nasdaq: ALBO) today announced that they have entered into a definitive merger agreement under which Ipsen will acquire Albireo, a leading innovator in bile-acid modulators to treat pediatric and adult cholestatic liver diseases. The anticipated acquisition will enrich Ipsen's Rare Disease portfolio and pipeline.

The lead medicine in Albireo's pipeline is Bylvay [®] (odevixibat), a potent, once-daily, oral, non-systemic ileal bile acid transport inhibitor (IBATi). Bylvay was approved in 2021 in the U.S. for the treatment of pruritus in patients three months of age and older with progressive familial intrahepatic cholestasis (PFIC), and in the E.U. for the treatment of PFIC in patients aged six months or older. Pruritus is one of the most prominent and problematic manifestations of the disease, often resulting in severely diminished quality of life. Bylvay has orphan exclusivity for the approved indications in PFIC in the U.S. and E.U.

"We are excited about the potential of Albireo's assets and scientific expertise, which we gain through this acquisition, and we believe this is a compelling growth opportunity for Ipsen." said David Loew, Chief Executive Officer of Ipsen. "Our Rare Disease franchise is strengthened with Bylvay, which, in addition to being the first-approved treatment in PFIC, has two further indications being investigated in rare liver conditions that are underserved. Additionally, Bylvay and the clinical and preclinical novel bile acid transport inhibitors in Albireo's portfolio complement our own pipeline in liver disease."

"Unwavering dedication to patients and commitment to science have always been the north star for Albireo. This focus has driven us to develop and gain approval for Bylvay as the first drug treatment for PFIC," said Ron Cooper, President and Chief Executive Officer of Albireo. "Our talented team at Albireo have advanced the first Phase III studies in three different pediatric liver diseases while discovering two promising new clinical stage bile acid modulators. We believe that Ipsen is well positioned to apply its global R&D and commercial capabilities to make these medicines available to more cholestatic liver disease patients and accelerate the mission of providing hope for families. "

In addition to this lead indication, Albireo announced in December 2022 that supplementary regulatory filings have been made for Bylvay in the E.U. and the U.S. for Alagille syndrome (ALGS). ALGS is a rare, genetic disorder that can affect multiple organ systems, including the liver, with a paucity of bile ducts preventing bile flow from the liver to the small intestine. The most debilitating symptom of ALGS is severe pruritus. In the Phase III ASSERT trial, treatment with Bylvay met both primary and secondary endpoints and was associated with statistically

significant improvements in pruritus severity and reductions in serum bile acid levels compared to placebo, and was well tolerated.

Furthermore, Bylvay is in late-stage development for biliary atresia (BA). It is currently being investigated in the BOLD study, the first, prospective double-blind, Phase III clinical trial in BA, a rare, pediatric liver disease that can result in cirrhosis and liver failure and is the leading cause of liver transplantation among children.[7] Orphan drug designations have been granted in both ALGS and BA indications in the U.S. and E.U.

As part of the transaction, Ipsen will also acquire Albireo's clinical stage asset A3907, a novel oral systemic apical sodium-dependent bile acid transporter (ASBT) inhibitor currently in development for adult cholestatic liver disease, such as primary sclerosing cholangitis (PSC), which could complement Ipsen´s existing development programs. In addition to Bylvay and A3907, Albireo's pipeline includes A2342, an oral systemic sodium-taurocholate co-transporting peptide (NTCP) inhibitor being evaluated for viral and cholestatic diseases, which is moving ahead in investigational new drug (IND)-enabling trials.

**Financial highlights**

The acquisition of Albireo will provide immediate incremental sales and strengthen Ipsen's rare disease infrastructure. Albireo guided for total Bylvay revenues of $24 million for 2022. Given the level of ongoing R&D expenses, the transaction is expected to be dilutive to Ipsen's core operating income until the end of 2024. This is in line with Ipsen's medium-term outlook regarding its strategic focus on building a high-value and sustainable pipeline through external innovation. The Group will provide its annual guidance for 2023 in February.

**Transaction details**

Under the terms of the agreement and plan of merger, Ipsen, through a fully-owned subsidiary, will initiate a tender offer to acquire all outstanding shares of Albireo at a price of $42.00 per share in cash at the closing of the transaction, for an initial estimated aggregate consideration of $952 million plus one contingent value right (CVR) per share. Each CVR will entitle its holder to deferred cash payments of $10.00 per CVR payable upon the U.S. Food and Drug Administration (FDA) approval of Bylvay in the Biliary Atresia indication at the latest by 31 December 2027, allowing for a potential increase in the number of patients in the BOLD study.

The $42.00 per-share cash consideration represents a premium of 104% compared to Albireo's 1-month volume-weighted average price of $20.60 preceding announcement of the transaction. The transaction will be fully financed by Ipsen's existing cash and lines of credit. The Board of Directors of Albireo has unanimously approved the transaction and recommended that the stockholders of Albireo tender their shares in the tender offer.

6

The closing of the tender offer will be subject to customary conditions, including the tender of shares which represent at least a majority of the total number of Albireo's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the receipt of consents of, or filings with, any governmental body or pursuant to certain foreign antitrust laws and the expiration of any applicable waiting period and other customary conditions. Upon the successful completion of the tender offer, Ipsen would acquire all shares not acquired in the tender offer through a second-step merger for the same consideration that the tendering stockholders will receive in the tender offer. It is anticipated the transaction will close by end of Q1, 2023.

**B. The Materially Incomplete and Misleading 14D-9**

23. On January 23, 2023, Defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

24. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of Centerview's fairness opinion, Centerview reviewed "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Albireo, including certain financial forecasts, analyses and projections and probabilities of success relating to Albireo and the probability of realizing the Milestone prepared by management of Albireo and furnished to Centerview by Albireo for purposes of Centerview's analysis." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that Albireo's management provided to the Board and Centerview.

7

25. Notably, the 14D-9 fails to disclose the line item entries forming the basis of Albireo's projected EBIT and Unlevered Free Cash Flow.

26. Additionally, the 14D-9 does not disclose a summary of Albireo's non-probability-adjusted projections.

27. Furthermore, the 14D-9 fails to disclose the probability of realizing the "Milestone" prepared by management of Albireo and furnished to Centerview.

28. This omitted information is necessary for Plaintiff to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Centerview's Financial Analyses*

29. With respect to the *Discounted Cash Flow Analysis,* the 14D-9 fails to disclose the Company's terminal values.

30. With respect to the *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis* the 14D-9 fails to disclose the specific financial metrics and multiples for each of the companies and transactions respectively, examined by Centerview.

31. With respect to the *Analyst Price Target Analysis*, the 14D-9 fails to disclose the individual price targets examined by Centerview and their sources.

32. With respect to the *Precedent Premiums Paid Analysis*, the 14D-9 fails to disclose the transactions examined and their specific premia.

### *Materially Incomplete and Misleading Disclosures Concerning Centerview's and Company Insiders' Potential Conflicts of Interest*

33. The 14D-9 fails to disclose material information concerning the potential conflicts of interest by Centerview, specifically if Centerview rendered any services to Federated Hermes, Inc. or Perceptive Advisors LLC – who collectively hold approximately 24.2% of the Company's

common stock – in the two years preceding their fairness opinion and what compensation Centerview was paid for such services.

34.     The14D-9 also fails to disclose material information concerning potential conflicts of interest of Company insiders, specifically if any of Ipsen's proposals or indications of interest discussed the retention of Company management in the surviving company following the conclusion of the Proposed Transaction or Ipsen management's purchase of or participation in the equity of the combined corporation.

35.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

36.     In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

37.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

38.     Further, the 14D-9 indicates that on January 8, 2023, Centerview reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion,

which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Albireo stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Centerview's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

39.    Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

40.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.    Defendants have filed the 14D-9 with the SEC with the intention of soliciting Albireo stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

42.    In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Albireo, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

43.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order

10

to make the statements made, in light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

44.    Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Albireo shares and the financial analyses performed by Centerview in support of its fairness opinion; and (iii) potential conflicts of interest by Company insiders and Centerview.

45.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that Centerview reviewed and discussed its financial analyses with the Board during various meetings including on January 8, 2023, and further states that the Board considered Centerview's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

46.    The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.    The Individual Defendants acted as controlling persons of Albireo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Albireo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.    Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

51.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

13

C.    In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D.    Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 27, 2023                    **ROWLEY LAW PLLC**

                                           *S/ Shane T. Rowley*
                                           Shane T. Rowley (SR-0740)
                                           Danielle Rowland Lindahl
                                           50 Main Street, Suite 1000
                                           White Plains, NY 10606
                                           Tel: (914) 400-1920
                                           Fax: (914) 301-3514
                                           Email: srowley@rowleylawpllc.com
                                           Email: drl@rowleylawpllc.com

                                           *Attorneys for Plaintiff*